IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

SARAH P. ZAY,

                                                                  OPINION AND ORDER

                Plaintiff,

                                                                      18-cv-405-bbc

      v.

NANCY A. BERRYHILL, Acting
Commissioner of Social Security,

                Defendant.

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

Plaintiff Sarah P. Zay is seeking review of a final decision denying her claim for disability insurance benefits under the Social Security Act. 42 U.S.C. § 405(g). Plaintiff contends that she has been disabled since March 3, 2011 because of narcolepsy, anxiety disorder and panic disorder. An administrative law judge concluded that even though plaintiff has severe impairments, she is not disabled because she can perform full-time work at all exertional levels, with some restrictions. The Appeals Council accepted review and also concluded that plaintiff is not disabled. As explained below, I agree with plaintiff that the commissioner did not give an adequate explanation in her decision for discounting the medical opinions in the record. Therefore, I will reverse the commissioner's decision and remand this case for further proceedings.

The following facts are drawn from the administrative record (AR).

1

FACTS

A. <u>Social Security Application and Background</u>

Plaintiff Sarah Zay was born in 1983. She filed for disability insurance benefits in November 2012, contending that she was disabled by anxiety, panic attacks and narcolepsy. AR 24, 218-24. Her application was denied initially and on reconsideration. AR 136-44, 146-54. Plaintiff requested a hearing, and appeared without representation at a hearing before an administrative law judge in March 2016. AR 78-105. In November 2016, plaintiff testified at a supplemental hearing in front of a different administrative law judge and with the assistance of counsel. AR 42-75. A medical expert and vocational expert also testified at the second hearing. The administrative law judge issued a written decision in December 2016, concluding that plaintiff was not disabled. AR 24-36. In January 2017, plaintiff sought review of the administrative law judge's decision from the Appeals Council, AR 209, and in March 2018, the appeals council granted review. AR 210-17.

In May 2018, the Appeals Council issued an unfavorable decision. AR 1-6. The Appeals Council amended the date that plaintiff was last insured to September 2021, but adopted many of the administrative law judge's findings regarding whether plaintiff was disabled.

B. <u>Overview of Medical Problems and Treatment</u>

Since 2011, plaintiff has reported symptoms of anxiety, depression and narcolepsy and has been treated with various medications for those impairments, including Klonopin,

2

Adderall, Trazadone and Ativan. In March 2011, a psychologist gave plaintiff a diagnosis of social anxiety and narcolepsy and assessed her global assessment of functioning score as 70. AR 316. At follow up appointments that same year, she seemed engaged during the visit and reported that she was doing well. She was working two jobs and had a vacation planned for Cancun. (It is not clear from the record whether plaintiff went on the vacation.) By July 2011, however plaintiff reported that her anxiety had increased and was making it difficult for her to engage in daily activities. She also reported that she had recently had a panic attack, and stated that she had had 10 panic attacks in her life. AR 368. In October 2011, plaintiff reported that she was working more than 32 hours a week at a nursing home, but that her exhaustion was making her frustrated and that she was considering applying for disability benefits. AR 366. By November 2011, she reported that she was having daily panic attacks before going to work and before any medical appointment. AR 363.

Throughout 2012, plaintiff continued to report difficulty sleeping, anxiety and panic attacks. In March 2012, she reported that her panic attacks were worsening and that she had difficulty leaving the house and answering her phone or door. AR 361. She quit her job because it was too stressful for her. Id. In April 2012, she reported that her panic attacks were difficult to control and that her medications were not helping. AR 359. Her doctor recommended on several occasions that plaintiff meet with a psychiatrist regarding her anxiety, but she responded that contacting psychiatry was too stressful for her. AR 351, 357, 361. Plaintiff continued to seek treatment for her anxiety, panic attacks and sleep difficulties from her primary care provider in 2013. Her symptoms were generally the same

3

as they were during 2012, and she experienced severe anxiety with social interactions and car rides. AR 344.

In June 2014, plaintiff participated in a consultative examination with Charles Moore, a psychologist. AR 415-21. Moore noted that plaintiff was cooperative and made fair eye contact, but her mood and affect were anxious. Moore gave plaintiff a diagnosis of generalized anxiety disorder, AR 420, and concluded that plaintiff would have problems understanding, remembering and carrying out even simple instructions, would not be able to respond satisfactorily in a basic social context and would be "less able" to withstand routine stressors. AR 421.

In August 2015, plaintiff was still working part-time for home health care and reported that her narcolepsy was well-controlled, but that she had problems with anxiety. AR 434. She still had not made an appointment with psychiatry for her anxiety. Id.

In 2016, plaintiff participated in a second consultative examination with Rebecca Angle, a psychologist. AR 450. She was anxious at the appointment and cried through most of it. AR 451. She reported having frequent panic attacks, especially when she had to drive or ride in a car. AR 450. Angle gave plaintiff a diagnosis of unspecified anxiety disorder. AR 454. As for plaintiff's ability to work, Angle concluded that plaintiff had the ability to understand, remember and carry out simply instructions, but would be significantly limited in her ability to get along with supervisors and coworkers, manage day-to-day work stress and maintain her concentration and work pace. Id.

Plaintiff's medical progress notes from 2016 show that plaintiff continued to report symptoms from anxiety and narcolepsy and continued to take Klonopin and Adderall, in addition to other medications. AR 461-42, 475. She also reported suffering panic attacks multiple times a day. AR 475. She continued to refuse to make appointments with behavioral health specialists because she thought making appointments with a new provider was too stressful. Id.

C. Administrative Hearings

The first administrative hearing was held on March 8, 2016, and plaintiff was not represented by counsel. AR 80. Plaintiff testified that she worked approximately eight hours a week at a group home for adults with disabilities, where she made meals and passed out medication. AR 85. She said she could not work more hours because of her anxiety, AR 86, and that she often made excuses to miss work or medical appointments so that she did not have to leave her house. AR 91. She had not answered her phone in months because it made her anxious. AR 93. She testified that her narcolepsy made her tired all of the time, which exacerbated her anxiety, AR 92, and that Klonopin did not seem to help. AR 91.

At the November 17, 2016 hearing, at which plaintiff was represented by counsel, plaintiff amended her alleged onset date to March 3, 2011. AR 46. She testified that she lived with her boyfriend and five-year old daughter, AR 47, that she had to leave the house and drive to take her daughter to school, but that she wished she never had to leave the house. AR 50. Most days she took her daughter to school and then went back to bed, but

5

sometimes she took her dogs for a walk. AR 62-61. She did not leave the house if she did not have to, and household chores overwhelmed her. Id. It was difficult for her to accomplish things outside of the house because of her anxiety, id., and because her narcolepsy caused her to be tired all of the time. AR 51. She testified that she had considered mental health counseling, but had not seen anyone. AR 52. At the time of the hearing, she was taking several medications for anxiety and narcolepsy.

Dr. Jeffrey Andert, a licensed and board certified clinical psychologist, testified as a medical expert. Andert had not treated or examined plaintiff, but reviewed her medical records. He gave the opinion that plaintiff had an anxiety disorder that did not meet any of the listing impairments. AR 53-54. He thought plaintiff would have moderate restrictions in activities of daily living, marked limitations in maintaining social functioning, moderate difficulties of concentration, persistence and pace due to anxiety and a moderate ability to process cognitive tasks. He noted that plaintiff had adequate memory and that the record contained no reports of decompensation. He also noted that plaintiff was capable of understanding, remembering and carrying out 1-3 step instructions and making judgments about them, but that she was precluded from contact with the general public. Andert thought plaintiff could have occasional contact with coworkers and could tolerate a full range of contact with supervisors.

Dr. Andert also stated that plaintiff "would need occasional unscheduled periods to recovery from panic attacks," but that the "[f]requency is a little unclear from the record." AR 56. He noted that some records suggested that plaintiff's attacks "can occur as much as

6

daily." Id.  He testified that if plaintiff got panic attacks in the work setting, "she may require some unscheduled time to recover from those." Id.  When the administrative law judge asked for clarification whether "scheduled breaks and lunches" would suffice or whether the panic attacks would come at random times, Dr. Andert said "[i]t would be difficult to predict" because the record did not provide information about "factors that might preciptate those to be able to predict when they would occur." AR 57.  He went on to say that "[g]iven the fact that her anxiety is related to social interaction," her panic attacks might be more likely with social interactions.  Id.  Plaintiff later testified that her panic attacks sometimes occur randomly.  AR 58.

In addition to plaintiff and Dr. Andert, a vocational expert testified.  The administrative law judge asked the vocational expert a series of hypothetical questions regarding the work availability for a person of plaintiff's age, education and work experience, with particular limitations. AR 71-72.

D.  Administrative Law Judge's Decision

The administrative law judge found that plaintiff was insured through March 31, 2016, and that she had not engaged in substantial gainful activity since her alleged onset date on March 3, 2011.  AR. 26.  The administrative law judge next found that plaintiff's narcolepsy, anxiety disorder and panic disorders were severe impairments, AR 26, but that the impairments did not meet or medically equal the severity of a listed impairment.  AR 27.

The administrative law judge found that plaintiff had the residual functional capacity

7

to perform a full range of work at all exertional levels but with the following nonexertional limitations:

> never climb ladders, ropes or scaffolds; never operate a motor vehicle as a condition of employment; avoid even moderate exposure to hazards, such as slippery, uneven surfaces, unprotected heights and moving machinery; avoid concentrated exposure to extreme temperatures and vibration; can understand, remember and carryout 1-3 step simple tasks and instructions; make simple judgments/decisions on such tasks and instructions; maintain adequate attention and concentration; interact appropriately with supervisors; interact occasionally with coworkers; no contact with the public; works best independently of others or small teams of 1-2 persons; no fast pace production or quotas, such as work that is regulated by a machine and can manage occasional changes in a simple, routine work environment.

AR 28-29.

In assessing plaintiff's subjective symptoms, the administrative law judge noted that although plaintiff stated that her anxiety made it difficult for her to leave the house, the record showed that she was able to attend her medical appointments regularly without an "exorbitant" number of cancellations. AR 29. The administrative law judge noted that despite her complaints of significant anxiety, plaintiff interacted with family members, attended medical appointments, held several part-time jobs, prepared some meals, planned a visit to Cancun, visited a local park, went hiking with her boyfriend, took care of her daughter and went grocery shopping once a week. AR 30-31. The administrative law judge also noted that plaintiff had never been hospitalized for psychiatric concerns and that she had refused to schedule mental health therapy, despite its being recommended. AR 29.

The administrative law judge gave "little weight" to the opinions of Dr. Moore and Dr. Angle, the psychological consultant examiners, who had given the opinion that plaintiff's

8

anxiety disorder would be significantly limiting in several respects. AR 33. The administrative law judge found that other evidence in the record undermined the opinions, including that plaintiff had good eye contact during examination, was able to attend her appointments alone, did not show signs of "psychomotor agitation," was never psychiatrically hospitalized despite receiving no formal mental health therapy and engaged in daily activities, which was inconsistent with being overly anxious. AR 33-24. The administrative law judge noted that plaintiff's mental status examinations are "generally fine, except for an anxious mood." AR 24.

The administrative law judge gave "great weight" to the opinion of Dr. Andert, the medical expert who testified at the hearing, with the exception of Andert's opinion that plaintiff would "need occasional unscheduled periods to recover from panic attacks." The administrative law judge gave that comment "no weight" because she concluded that it was not supported by other evidence of plaintiff's daily activities and because plaintiff had commented at one 2011 medical appointment that she had had only 10 panic attacks in her entire life. AR 33.

Finally, the administrative law judge gave "great weight" to the opinions of the state agency consultants, who had concluded that plaintiff was capable of unskilled work and was only moderately limited by her mental health impairments. AR 32.

The administrative law judge concluded that plaintiff could not perform any of her past relevant work, but that, based on the vocational expert's testimony, she could perform

9

other work that existed in the national economy. Specifically, the administrative law judge identified screwdriver operator, basement worker and cable worker.

### E. Appeals Council Decision

On review, the Appeals Council adopted most of the administrative law judge's findings addressing the objective medical evidence, plaintiff's activities, part-time work and treatment. At step 3, the Appeals Council applied the updated regulations affecting mental listings, and concluded that plaintiff had moderate limitations in the ability to understand, remember and apply information; marked limitations in the ability to interact with others; moderate limitations in the ability to concentrate, persist or maintain pace; and moderate limitations in the ability to adapt or manage herself. AR 5. The Appeals Council concluded that plaintiff had the residual functional capacity to perform work at all exertional levels with some nonexertional limitations, including: being able to understand, remember, and carry out 1-3 step simple tasks and instructions; make simple judgments and decisions; interact occasionally with coworkers; no contact with the public; work best independently or in small teams of 1-2 people; no fast paced production or quotas; and make occasional changes in a routine work environment. AR 5-6.

In considering the medical evidence, the Appeals Council gave significant weight to the state agency consultants; great weight to the opinion of the medical expert, Dr. Jeffrey Andert, except as to his opinion that plaintiff may need unscheduled breaks, to which it gave

no weight; and little weight to the opinions of the two consultative examiners, Drs. Moore and Angle, citing to the administrative law judge's analysis of those opinions. AR 7.

OPINION

Plaintiff contends that the administrative law judge erred by (1) failing to give proper weight to the medical opinions in the record; and (2) propounding a flawed hypothetical question to the vocational expert. As an initial matter, I note that plaintiff challenges the administrative law judge's analysis and decision and does not address the Appeals Council's decision at all, despite the fact that the Appeals Council's decision is the final decision of the Commissioner. Although the government pointed out plaintiff's error in its opposition brief, plaintiff did not file a reply brief in support of her appeal to address the Appeals Council decision. Plaintiff's decision not to file a reply brief was a poor strategy and could have resulted in waiver of any challenge to the Appeals Council decision. However, as discussed below, because the Appeals Council's decision adopts much of the administrative law judge's analysis and contains errors regarding the opinions of the medical experts, I have considered plaintiff's arguments.

In reviewing the Appeals Council decision, I must determine whether the decision is supported by "substantial evidence," Schloesser v. Berryhill, 870 F.3d 712, 717 (7th Cir. 2017), meaning "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Moon v. Colvin, 763 F.3d 718, 721 (7th Cir. 2014) (citations omitted). This deferential standard of review "does not mean that we scour the record for

11

supportive evidence or rack our brains for reasons to uphold" the decision. Id. Rather, the Appeals Council must identify the relevant evidence and build a "logical bridge" between that evidence and the ultimate determination. Schloesser, 870 F.3d at 717. See also Briscoe ex rel. Taylor v. Barnhart, 425 F.3d 345, 351 (7th Cir. 2005) ("[T]he [Appeals Council] must . . . explain [its] analysis of the evidence with enough detail and clarity to permit meaningful appellate review."); Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009).

## A. Medical Opinions

Plaintiff contends that this case must be remanded because the administrative law judge failed to give appropriate weight to the medical opinions of Dr. Jeffrey Andert, Dr. Moore and Dr. Angle. The Appeals Council gave these medical opinions the same weight that the administrative law judge did, and assigned weight to them for reasons similar to those cited by the administrative law judge.

First, both the Appeals Council and administrative law judge gave Dr. Andert's opinion testimony "great weight" and incorporated Andert's opinions into plaintiff's residual functional capacity. However, both the Appeals Council and the administrative law judge gave "no weight" to Andert's opinion that plaintiff would need occasional unscheduled periods to recover from panic attacks. Plaintiff challenges the decision to give "no weight" to this portion of Andert's testimony and argues that if Andert's opinion regarding unscheduled breaks had been incorporated into the residual functional capacity, plaintiff would be found to be disabled.

12

Plaintiff's argument is persuasive. The administrative law judge dismissed Andert's opinion about unscheduled breaks on the ground that it was not supported by other evidence in the record. The administrative law judge pointed to records showing that plaintiff lives with her daughter and significant other, attended her medical appointments alone, occasionally took her daughter to medical appointments, displayed no psychomotor agitatation, planned a vacation, and reported once that she had had only 10 panic attacks in her life. AR 33. But the administrative law judge did not attempt to explain how these activities undermined Andert's opinion regarding plaintiff's panic attacks. Whether plaintiff lived with her daughter and boyfriend, was able to attend medical appointments approximately once a month or planned a vacation provides little insight into whether plaintiff would suffer from daily panic attacks while working at a full-time job. Forsythe v. Colvin, 813 F.3d 677, 679 (7th Cir. 2016) ("[E]xtrapolating from what people do at home, often out of necessity, to what they could do in a 40-hour-a-week job is perilous."). Additionally, although plaintiff reported to her doctor in July 2011 that she had had only 10 panic attacks in her life, she reported in November 2011 that she was having daily panic attacks. AR 363, 368. She continued to report daily panic attacks from late 2011 throughout 2016. The administrative law judge failed to address this evidence. Moore v. Colvin, 743 F.3d 1118, 1123 (7th Cir. 2014) (administrative law judge may not cherry pick the record or ignore evidence that is inconsistent with her conclusions.).

The Appeals Council's rejection of Andert's opinion regarding panic attacks is equally problematic. The Appeals Council stated only that it was rejecting the opinion because

13

Andert was "uncertain" about how limiting the panic attacks would be. AR 6. Andert testified that it was not clear from the record how often plaintiff would need breaks, whether her panic attacks would be triggered by certain stressors in the workplace aside from social interactions or whether plaintiff could use normal breaks to recover from her panic attacks. But the fact that Andert could not state specifically how often plaintiff would need to take unscheduled breaks is not a sufficient reason to reject his entire opinion about panic attacks, particularly where there is evidence throughout the medical record of plaintiff's reporting daily and debilitating panic attacks for which she had been prescribed multiple medications. If the Appeals Council believed that Andert's opinion was unclear, it should have asked for additional medical evaluations or evidence regarding plaintiff's panic attacks. Scott v. Astrue, 647 F.3d 734, 740–41 (7th Cir. 2011); Nelms v. Astrue, 553 F.3d 1093, 1097 (7th Cir. 2009). Instead, the Appeals Council improperly ignored evidence that was inconsistent with its conclusions about plaintiff's limitations. Moore, 743 F.3d at 1123.

Similarly, both the Appeals Council and administrative law judge ignored evidence that supported the limitations found by Drs. Moore and Angle. After conducting a consultative examination of plaintiff, Dr. Moore concluded that plaintiff would have problems understanding, remembering and carrying out simple instructions, which would be more pronounced with more complex and verbal information. Moore believed plaintiff would benefit from increased context and hands-on cues, would not be able to respond satisfactorily in a basic social context, would be less able to withstand routine stressors and would have marked limitations with more complex work demands without significant

14

accommodations and support. AR 420-21. It was Dr. Angle's opinion that plaintiff had the ability to understand, remember and carry out instructions given to her, but that her ability to get along with supervisors and coworkers would be significantly limited because of her anxiety. Angle also stated that plaintiff's ability to maintain her concentration and work pace and manage day-to-day stress would be significantly limited due to her anxiety. AR 454.

The administrative law judge and Appeals Council gave Dr. Moore's opinion little weight on the ground that it was not supported by objective findings, including plaintiff's generally good eye contact, "normal" mental health evaluations, lack of "psychomotor agitation" during examinations, her ability to interact with her family and attend appointments alone, lack of psychiatric hospitalization, and Moore's own findings that she had fair to good judgment and insight and average memory in formal testing. AR 7, 33, 418-19. The Appeals Council and administrative law judge gave little weight to Dr. Angle's opinion for the same reasons it gave little weight to Dr. Moore's opinion. AR 7, 33-34.

However, neither the Appeals Council nor administrative law judge explained adequately why plaintiff's ability to engage in a handful of activities with her immediate family undermined the opinions of Drs. Moore and Angle. The Court of Appeals for the Seventh Circuit has held that "although it is appropriate for an ALJ to consider a claimant's daily activities . . . this must be done with care. We have repeatedly cautioned that a person's ability to perform daily activities, especially if that can be done only with significant limitations, does not necessarily translate into an ability to work full-time." Roddy v. Astrue, 705 F.3d 631, 639 (7th Cir. 2013) (collecting cases). See also Thomas v. Colvin, 826 F.3d

15

953, 961 (7th Cir. 2016). Additionally, although the Appeals Council and administrative law judge noted that plaintiff had "normal" mental health examinations, declined to make an appointment with psychiatry and had not been hospitalized, neither discussed plaintiff's explanation that her anxiety made it difficult for her to make a psychiatry appointment or the numerous treatment notes in which plaintiff's medical providers found that plaintiff was struggling with anxiety, panic attacks, exhaustion and lack of concentration.

The Appeals Council and administrative law judge also failed to acknowledge that the treatment observations included descriptions of how plaintiff presented at her appointment and were not necessarily general assessments of plaintiff's mental health or how she would present herself in the workplace. Gerstner v. Berryhill, 879 F.3d 257, 262 (7th Cir. 2018) ("[T]he affect and mood notes that the ALJ emphasized simply described how Gerstner presented *on the days of her appointments*. They were not general assessments.") (emphasis in original). "After all, an individual's ability to comport herself normally during [thirty-minute long psychiatry] sessions or examinations does not necessarily lead to an inference that she has the functional capacity to work full-time." Kuehl v. Berryhill, 2018 WL 4405613, at *6 (W.D. Wis. Sept. 17, 2018) (citing Gerstner, 879 F.3d at 262).

The Appeals Council and administrative law judge failed to "build a logical bridge" between the evidence and their rejection of the medical opinion testimonies. Villano, 556 F.3d at 55 (although "[t]he ALJ is not required to discuss every piece of evidence, [he] must build a logical bridge from evidence to conclusion"). Therefore, the case must be remanded

16

so that the Commissioner can conduct a more thorough analysis of the medical records and properly consider the medical opinions.

B. <u>Residual Functional Capacity</u>

Plaintiff's second argument is that the administrative law judge's residual functional capacity determination and corresponding question to the vocational expert, were flawed because they do not directly address plaintiff's limitations in concentration, persistence and pace. Specifically, she contends that the residual functional capacity and hypothetical question were inconsistent with the administrative law judge's finding that plaintiff had moderate limitations in concentration, persistence and pace and improperly equated moderate limitations in concentration persistence and pace with unskilled work and other inadequately defined limitations.

The Commissioner responds that the Appeals Council and administrative law judge relied on Dr. Andert's testimony to support their residual functional capacity assessments, and that Andert's testimony qualifies as "substantial evidence" to support the assessment. The Commissioner's argument is not entirely persuasive. It is true that the administrative law judge and Appeals Council could rely on Andert's opinion testimony to craft limitations related to plaintiff's ability to concentrate, persist and maintain pace. <u>Milliken v. Astrue</u>, 397 Fed. App'x. 218, 221 (7th Cir. 2010) (administrative law judge is entitled to rely on a medical expert who "effectively translate[s] an opinion regarding the claimant's mental limitations into an RFC assessment"); <u>Johansen v. Barnhart</u>, 314 F.3d 283, (7th Cir. 2002)

(in formulating hypothetical for vocational expert, administrative law judge reasonably relied on physician's opinion that plaintiff could perform low-stress, repetitive work). However, Dr. Andert gave the opinion that plaintiff's concentration, persistence and pace would be moderately limited by her anxiety and relatedly, that she would need unscheduled periods to recover from panic attacks. Because the Appeals Council and administrative law judge rejected Andert's opinion that plaintiff would need unscheduled breaks, it is not clear whether the limitations in plaintiff's residual functional capacity assessment and questions to the vocational expert reflect plaintiff's moderate limitations in concentration, persistence and pace, or whether they relate to some other limitations.

The Court of Appeals for the Seventh Circuit has made clear that an administrative law judge must orient the vocational expert to all of a claimant's limitations, including those in concentration, persistence or pace. O'Connor-Spinner v. Astrue, 627 F.3d 614, 620-21 (7th Cir. 2010) ("[T]he ALJ should refer expressly to limitations on concentration, persistence and pace in the hypothetical in order to focus the VE's attention on these limitations and assure reviewing courts that the VE's testimony constitutes substantial evidence of the jobs a claimant can do."). Although the administrative law judge does not need to use the magic words "concentration, persistence or pace," the record must show that the vocational expert was somehow aware of the claimant's particular limitations. Yurt v. Colvin, 758 F.3d 850, 857-58 (7th Cir. 2014). In this instance, the Appeals Council's and administrative law judge's conclusions about plaintiff's difficulties in maintaining concentration, persistence or pace are unclear. Thus, regardless whether this would be an

18

independent reason to remand this case, the next administrative law judge who handles the case should explain more clearly plaintiff's limitations in concentration, persistence and pace and clearly incorporate those limitations in any hypothetical questions to the vocational expert.

ORDER

IT IS ORDERED that the decision denying benefits to plaintiff Sarah P. Zay is REVERSED and this case is REMANDED to defendant Nancy A. Berryhill, Acting Commissioner of Social Security, for further proceedings consistent with this opinion.

Entered this 10th day of April, 2019.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge